SCANNED at WVCF and Emailed on
12-22-16 by BH - 258 pages.
(date)      (initials)   (num)

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **KENNETH GEORGE WOLFE,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **-v-** | ) |
| **COMMISSIONER,** | ) |
| **INDIANA DEPARTMENT OF** | ) |
| **CORRECTIONS,** | ) |
| **CORIZON MEDICAL, INC.,** | ) |
| **MICHAELL MITCHEFF, M.D.,** | ) |
| **MANDIP KAUR BARTELS, M.D.,** | ) |
| **NAVEEN RAJOLI, M.D.,** | ) |
| **NEIL J. MARTIN, M.D.,** | ) |
| **ESTHER HINTON,** | ) |
| **MICHAEL PERSON, M.D.,** | ) |
| **KIM HOBSON, H.S.A.,** | ) |
| **R. ROBINSON, R.N.,** | ) |
| **RONALD LEROY YOUNG, M.D.,** | ) |
| **MONICA GIPSON, R.N.,** | ) |
| **TONY HOBBS,** | ) |
| **L. A. VAN NATTA,** | ) |
| **MIKE SMITH,** | ) |
| **T. LITTLEJOHN,** | ) |
| **F. LITTLEJOHN,** | ) |
| **CHAPLAIN D. WALKER,** | ) |
| **SERGEANT S. ROBBINS,** | ) |
| **DAVID LIEBEL,** | ) |
| **JEANNE WATKINS,** | ) |
| **Defendants.** | ) |

**FILED**

1:51 pm, Dec 22, 2016

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Laura A. Briggs, Clerk

Cause No.  2:16-cv-00471-WTL-MJD

1

# PRISONER COMPLAINT
# 42 U.S.C. § 1983

### JURY TRIAL DEMAND

### I. INTRODUCTION

1. This is a prisoner complaint, 42 U.S.C. § 1983 action filed pro-se, by Plaintiff, Kenneth George Wolfe, a State prisoner, alleging violation of his constitutional rights to receive adequate medical care and treatment, and seeking injunctive relief and money damages. Plaintiff also seeks an injunction and damages pursuant to the Americans with Disabilities Act and the Rehabilitation Act.

### II. JURISDICTION & VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States and also under the Constitution and laws of the State of Indiana.

3. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 (a) (3) in that this action seeks to redress the deprivation, under color of State law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

4. Jurisdiction is invoked in this court pursuant to 42 U.S.C. § 1983, which provides:

> "Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress."

2

and 42 U.S.C. § 2000cc First Amendment claim under 42 U.S.C. § 1983.

5. Since 1871, when it was passed by Congress, 1983 has stood as an independent safeguard against deprivations of federal constitutional and statutory rights. See, Patsy v. Florida Board of Regents, 457 U.S. 496 (1982); Mitchum v. Foster, 407 U.S. 225, 242 (1972); Monroe v. Pape, 365 U.S. 167, 183 (1961). The Supreme Court has held 42 U.S.C. § 1983 was "intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 700-701 (1978).

6. If the claim is one alleging a violation of the specific constitutional guarantees of the Bill of Rights a plaintiff may invoke 1983 regardless of the availability of a State remedy. See, Daniels v.

Williams, 474 U.S. 327, 338 (1986).

7. State courts have jurisdiction to entertain 42 U.S.C. § 1983 complaints. State courts have concurrent jurisdiction with the federal courts to entertain actions brought under 42 U.S.C. § 1983. See, Love v. Rehfus, 946 N.E.2d 1, 19 n. 21 (Ind. 2011)( citing, Haywood v. Drown, 556 U.S. ___ (2009); Martinez v. California, 444 U.S. 277, 283 n. 7 (1980)). See also, Maine v. Thiboutot,448 U.S. 1, 3 n. 1 (1980) (State courts may exercise concurrent jurisdiction over 42 U.S.C. § 1983 claims).

8. To make out a 1983 claim, a plaintiff must establish that a deprivation of rights, privileges, or immunities secured by the United States Constitution or federal law, the Indiana Constitution, or state law, resulted from conduct occurring under the color of state law....Substantive due process

prohibits state action that deprives one of life, liberty, or property without a rational basis for the deprivation. Stewart v. Fort Wayne Community Schools, 564 N.E.2d 274, 279 (Ind. 1990).

## VENUE SHOULD BE IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF INDIANA TERRE HAUTE DIVISION

9. Plaintiff is requesting to withdraw his complaint from State court and transfer this complaint to the Federal District Court in Terre Haute as most of his issues presented happened at the Wabash Valley Correctional Facility.

### III. PARTIES

### A. PLAINTIFF INFORMATION

11. Name: Kenneth George Wolfe, D.O.C. No. 863575

12. Place of incarceration: Wabash Valley Correctional Facility.

13. Address; P.O. Box 1111, Carlisle, Indiana 47838.

14. Issues Plaintiff is suing about happened at:

    a. Wabash Valley Correctional Facility, P.O. Box 1111, Carlisle, In. 47838.

    b. Pendleton Correctional Facility, 4490 W. Reformatory Rd., Pendleton, In. 46064.

    c. Goodman Campbell, 8333 Naab Rd., Indianapolis, In. 46260.

    d. Indiana Department of Corrections, I.G.C.S., 302 W. Washington St., Indianapolis, In. 46204

15. The issues Plaintiff is suing about happened while incarcerated at:

    The Wabash Valley Correctional Facility.

    The Pendleton Correctional Facility.

    Goodman Campbell Brain and Spine Surgical Group.

    Indiana Department of Corrections.

## B. DEFENDANTS INFORMATION

16. Defendants being sued;

Commissioner of the Indiana Department of Corrections,

Corizon Medical, Inc.,

Neil J. Martin, M.D., Corizon, Wabash Valley Correctional Facility,

Mandip Bartels, M.D., Corizon, Indianapolis Regional Medical Director,

Michaell Mitchiff, M.D., Corizon Regional Medical Director, Indianapolis, and later D.O.C.

employee hired by the State of Indiana to oversee Corizon, Indiana Department

of Corrections Central Office, Indianapolis, Indiana 46204,

Esther Hinton, Corizon, 9245 N. Meridian St. Ste. 102, Indianapolis, Indiana 46260,

Michael E. Person, M.D., Corizon, Pendleton Correctional Facility,

Naveen Rajoli, M.D. Corizon, Wabash Valley Correctional Facility,

Kim Hobson, R.N., H.S.A. Corizon, Wabash Valley Correctional Facility,

R. Robinson, R.N. Corizon, Wabash Valley Correctional Facility,

Ronald L. Young, II, M.D. Goodman Campbell Brain and Spine, Indianapolis,

Monica Gipson, R.N. Indiana Department of Corrections Central Office, Indianapolis,

L.A. Van Natta, Indiana Department of Corrections Central Office, Indianapolis,

Tony Hobbs, Indiana Department of Corrections Central Office, Indianapolis,

Teresa Littlejohn, Indiana Department of Corrections, Wabash Valley Correctional Facility,

Frank Littlejohn, Indiana Department of Corrections, Wabash Valley Correctional Facility,

Chaplain D. Walker, Indiana Department of Corrections, Wabash Valley Correctional
Facility,

Sergeant S. Robbins, Indiana Department of Corrections, Wabash Valley Correctional
Facility,

David Liebel, Indiana Department of Corrections Central Office, Indianapolis,

5

Mike Smith, Indiana Department of Corrections Central Office, Indianapolis,

Jeanne Watkins,  Mailroom Supervisor, Wabash Valley Correctional Facility.

## IV EXHAUSTION OF AVAILABLE REMEDIES

17. Plaintiff exhausted his administrative remedies before filing this complaint.

18. See attached grievances

19. See  Ombudsman Complaints

## V FACTUAL STATEMENT

## A. MEDICAL ISSUES

SCIATICA ISSUES:

20 . On or about January 6, 2006, while at the Pendleton Correctional Facility, Plaintiff was taken to the Indiana University Medical Center in Indianapolis where a nerve conduction study, EMG, was performed on his left leg by Robert M. Pascuzzi, M.D. where it was determined that Plaintiff had L4 Radiculopathy with changes at L5.

21 . On or about January 27, 2006, while at the Pendleton Correctional Facility, Plaintiff was taken to the Indiana University Medical Center in Indianapolis where a nerve conduction study, EMG, was performed on his right leg by Robert M. Pascuzzi, M.D. where it was determined that Plaintiff had L4 Radiculopathy with changes at L5.

22 . After the nerve conduction studies it was determined that Plaintiff had sciatica in both legs by the Pendleton Correctional Facility Doctor Eli, Nurse Practitioner Kelly Carroll, Wishard Hospital medical professionals.

23 . On or about February 24, 2010 Doctor William H. Wolfe, at the Pendleton Correctional Facility, ordered the first wheelchair for the Plaintiff to keep in his possession full time as a result of a diagnosis of sciatica in both legs from his independent examinations.

GASTRIC COMPLAINTS:

25. Plaintiff has complained of gastric problems his entire incarceration which started in 1986, and received treatment for those gastric problems now listed as "DISORDERS OF FUNCTION OF STOMACH" under CHRONIC PROBLEMS in Plaintiff's medical records for most of his incarceration until Kim Hobson, H.S.A. changed this to PAST CHRONIC PROBLEMS.

26. On or about September 11, 2013 Plaintiff was ordered to discontinue his Kosher diet so that he could receive a Gastric Soft Diet ordered by Doctor Mike Person for his chronic gastric problems. This diet has never been provided.

27 . On or about April 8, 2015, Doctor Neil J. Martin informed Plaintiff that he would not receive an endoscopy or any other test for his chronic 'disorders of functions of stomach'.

28 . On April 9, 2015, Plaintiff submitted his informal complaint for grievance # 87535, and on April 20, 2015 Marilyn Rodriguez, RN, DON, responded to Plaintiff's Complaint.

29 . On April 23, 2015 Plaintiff submitted his formal grievance requesting 'surgery to repair his hiatal hernia and G.E.R.D., a gastric soft diet, a foam wedge, Maalox, and prilosec,' until such time as surgery was performed to repair these issues. No surgery was ever performed.

WHEELCHAIR ISSUES:

30 . On or about October 29, 2013, while incarcerated at the Pendleton Correctional Facility, Doctor John B. Clarkson ordered that a wheelchair be issued to Plaintiff.

31 . On or about April 9, 2014, Doctor Michael Person ordered that Plaintiff be transported in a wheelchair van when leaving the Pendleton Correctional Facility.

32 . Plaintiff has been issued five (5) different wheelchairs since 2010 and diagnosed with sciatica by numerous specialist and approved to use a wheelchair van when transported by Doctor Mike Person at the Pendleton Correctional Facility, only to be denied of this mandated treatment since arriving at the Wabash Valley Correctional Facility by Doctor Neil J. Martin and Corizon medical staff in order to save money.

NURSES REFUSED TO DELIVER MEDICATION:

33 . Since arriving at the Wabash Valley Correctional Facility Plaintiff has been consistently denied prescribed medication, and on was told that he would not receive his medication because he was unable to walk to pick up his medication because the nurse would not deliver his medication like she was supposed to do. See Grievance #90456

8

CARPAL TUNNEL ISSUES:

34. On or about May 15, or 16,, 2014 Plaintiff was transported in a wheelchair van from the Pendleton Correctional Facility to St. Vincent Anderson Regional Hospital where a nerve conduction study, E.M.G., was performed on Plaintiff's right arm by Doctor Rocco.

32. The findings of the nerve conduction study by Doctor Rocco were: "RIGHT C5 RADICULOPATHY" and "CLINICALLY SIGNIFICANT RIGHT CARPAL TUNNEL SYNDROME...SUGGEST SURGICAL CORRELATION", also, "M.R.I. CERVICAL SIGGESTED".

33 . On April 8, 2015, after many attempts to obtain the mandated Carpal Tunnel Surgery, Plaintiff submitted an informal complaint to Grievance #87524, and on April 23, 2015 submitted his formal grievance. See Grievance #87524.

34. Plaintiff was denied Carpal Tunnel surgery by Doctor Neil J. Martin who listed his reason for denial as Plaintiff having no chance of returning to society and therefore no need of the use of his hand to perform work to support himself.

CERVICAL ISSUES:

35 . On or about August 3. 2005, while at the Pendleton Correctional Facility, Plaintiff was taken to the Indiana University Medical Center in Indianapolis where a nerve conduction study, EMG, was performed on his right arm by Robert M. Pascuzzi, M.D. where it was determined that Plaintiff had C7 radiculopathy.

36.  On or about June 2, 2014, Plaintiff was transported in a wheel chair van to St. Vincent Anderson Regional Hospital from the Pendleton Correctional Facility to have an M.R.I. of his cervical spine.

37.  Doctor Ronald Leroy Young, II, made a fraudulent statement claiming that Plaintiff **ONLY HAD MILD ARTHRITIS** in his neck in 2014 when Plaintiff has submitted medical documents and professional statements to the contrary in his exhibits to this complaint, and in his medical records. By committing said fraud Doctor Young caused Plaintiff years of unnecessary and wanton infliction of pain and suffering, condoned by Indiana Department of Corrections officials and other Corizon medical staff. Doctor Young's fraudulent medical statement was used to deny Plaintiff needed medical care and to save money by both the Indiana Department of Corrections and Corizon.

WHEELCHAIR VAN ISSUE:

38.  On or about November 27, 2014, Plaintiff was transferred from the Pendleton Correctional Facility and transported in a wheelchair van to the Wabash Valley Correctional Facility.

39. On or about March 20, 2015 Plaintiff submitted, by certified mail, his NOTICE OF TORT seeking adequate medical care and treatment.

40. On or about March 27, 2014 Doctor Neil J. Martin discontinued Plaintiff's pain medication "Methadone". See Grievance #87617.

41. On or about May 8, 2015, Doctor Neil J. Martin refused to discuss further Plaintiff's cervical pain and lack of mobility complaints. See Grievance #87617.

42. On or about August 24, 2015, Plaintiff was transported to the UAP Clinic in Terre Haute with his wheelchair and forced to climb into a Brigg Unit while in trip gear at which time Plaintiff injured himself because there was no hand holds or steps to climb into the Brigg Van and Plaintiff has chronic medical issues involving the use of his arms and hands. See Grievance #89246.

43. On or about September 11, 2015 Lt Allen came to the Law Library and took Plaintiff to an empty classroom where Lt. Allen told Plaintiff, in private, to stop complaining about his broken wheelchair or it will be confiscated.

44. On or about September 23, 2015 Lt. Allen came to Plaintiff's housing location and confiscated Plaintiff's wheelchair in retaliation for Plaintiff submitting a facility grievance. See Grievance #89084.

TRICYCLIC ALLERGIES ISSUES:

45. On or about May 20, 2015, Plaintiff was ordered Nortriptyline for pain by Doctor Neil J. Martin to replace the Methadone he discontinued knowing that Plaintiff is allergic to "Tricyclic Compounds". See Grievance #87893.

FALSIFIED MEDICAL RECORDS ISSUE:

46 . On 11-17-15, Plaintiff received a copy of his chronic care entry from 11-05-15 and discovered that almost all of his chronic care issues had been deleted.

11

47 . On 11-18-15 Plaintiff submitted an informal complaint to Health Services Administrator Kimberly Hobson, RN, and received his response to that complaint on 12-01-15.

48 . In the response to Plaintiff's informal complaint Kim Hobson stated, "You are still in chronic care for Hepatitis C, Asthma, & hypertension. Omitting all of the other chronic medical problems listed on page 7 of 17 in Grievance #89906.

49 . On 12-01-15 Plaintiff submitted his Formal Grievance requesting, "LIST ALL OF MY CHRONIC CARE MEDICAL PROBLEMS AND STOP FALSIFYING MY MEDICAL RECORDS".

50 . Kim Hobson is the Health Services Administrator and aware that Plaintiff's medical records were changed to reflect less serious medical conditions ordered by Doctor Naveen Rajoli. See Grievance #89906, page 9 of 17.

51 . Both Kim Hobson and Doctor Naveen Rajoli were deliberately indifferent to Plaintiff's serious medical needs when they changed/altered the Plaintiff's medical records in an effort to deny medical care and treatment unless a co-pay was deducted from plaintiff every time Plaintiff requested care for a chronic issue.

DENIED TREATMENT FOR SERIOUS INJURY AFTER ASSAULTED:

52 . On February 10, 2016, Plaintiff was assaulted and received serious bodily injury to his face, neck, eye, with possible concussion and fracture to his head. See Grievance 91303.

53 . On February 11, 2016 Plaintiff was seen by Doctor Rajoli who ordered x-rays of head but refused to order x-rays of Plaintiff's neck.

12

54 . Plaintiff submitted an informal complaint on February 25, 2016, for grievance #91303.

55. On May 6, 2016, Plaintiff wrote Superintendent Dick Brown requesting assistance in obtaining medical care from injuries received as a result of being assaulted on February 10, 2016.

56. On May 17, 2016, Plaintiff was seen by the facility dentist where it was determined that there was no sign of injury from the February 10, 2016, assault, even though Plaintiff's dentures no longer fit in his mouth properly and he was having difficulty chewing his food.

57. On May 18, 2016, Plaintiff was seen in sick call by Doctor Byrd and was told that he had posttraumatic injury from being assaulted on February 10, 2016.

58. On May 18, 2016, Plaintiff was seen by the facility eye Doctor who said that there was no sign of injury from the February 10, 2016 assault and that Plaintiff's right eye watering was a result of cataracts, but Plaintiff's right eye vision was worse than the last exam and ordered new eye glasses.

59. Also on May 18,2016, Plaintiff spoke with Nurse Kim Hobson, Health Services Administrator, who told Plaintiff that there was no sign of injury to his eye or to his mouth; even though Plaintiff's dentures no longer fit properly, his right eye constantly waters now, his concentration and memory are impaired, he has right side headaches and dizziness, and very sharp stabbing pains in his neck shooting into the base of his skull.

60. On May 31, 2016, while on a visit to the facility dentist to have impressions made, Plaintiff had a nose bleed that would not stop for about fifteen (15) minutes and was ignored by numerous

nurses walking by him and was simply told the he would be rescheduled to see the dentist on a later date.

61. Plaintiff has high blood pressure and nose bleeds three or four times a week and when his blood pressure is taken at sick call with a blood pressure cuff it is consistently over 150/90, then medical assistant Fritzinger takes Plaintiff's blood pressure with the older astygmomenometer Plaintiff's blood pressure mysteriously becomes normal.

62. Plaintiff's head and neck x-rays since being assaulted have also become less serious than older x-rays from 2009, and M.R.I. results from 2009 and 2014.

63. On or about May 27, 2016, the inmate that assaulted Plaintiff was moved to  E-building and is on the same recreation line as the Plaintiff. This is not normal Department of Correction procedures, which makes Plaintiff wonder if the Facility is attempting to instigate a result that would allow them to remove one, or both, of these offenders from the prison population.

64. The Indiana Department of Corrections, and Corizon Medical, Inc., are bound by legal, moral, ethical, and contractual, obligations to provide adequate medical care and treatment to Indiana prisoners in their custody and under their care, and in Plaintiff's case, failed to provide that care and treatment..

### B. RELIGIOUS ISSUES

CONFISCATED RELIGIOUS MATERIALS:

65 . On or about November 27, 2014 Plaintiff was transferred to the Wabash Valley Correctional Facility at which time all of Plaintiff's property was kept from him to be inventoried by Sergeant S. Robbins at the facility receiving area.

66 . On or about December 2, 2014 Plaintiff received his personal property from Sergeant S. Robbins and discovered that religious publications and materials that Plaintiff considered essential to the practice, study, and teaching of his faith had been confiscated by Sergeant S. Robbins.

67 . On December 8, 2014 Plaintiff requested in writing to speak with Assistant Superintendent Frank Littlejohn about the religious materials confiscated by Sergeant S. Robbins. See Grievance #86006.

68 . On December 11, 2014, Plaintiff again wrote Mr. Frank Littlejohn concerning the confiscated religious items, and again received no response concerning this issue. Grievance #86006, letter dated 12-11-14.

69 . On December 18, 2014 Plaintiff requested from Chaplain D. Walker State Form 47684, "REQUEST FOR AUTHORIZATION", Grievance 86006 REQUEST FOR INTERVIEW.

70 . On or about December 18, 2014 Plaintiff submitted a formal grievance after many attempts to obtain his confiscated religious publications and items that were confiscated by Sergeant S. Robbins. See attached grievance number 86006 that also shows Plaintiff's attempts to resolve this issue informally and who was contacted.

71 . On January 14, 2015 Plaintiff wrote the American Civil Liberties Union of Indiana concerning Grievance 86006.

PLAINTIFF DENIED USE OF RESTROOM:

72 . Plaintiff was denied the use of a restroom on several occasions while attending religious services which caused him to have accidents due to bowel and bladder medical conditions. See attached Grievance # 90707.

PLAINTIFF HAS DEMONSTRATED RELIGIOUS SINCERITY:

73. Plaintiff has demonstrated religious sincerity, and in fact was appointed 'Inmate Facilitator' by the Wabash Valley Correctional facility to conduct Jewish services and be a leader of the Jewish community.

74. Plaintiff has been repeatedly denied group worship for Jewish Holy days such as Yom Kippur, the Holiest day of the Jewish year.

## ACCESS TO THE COURTS

DENIED ACCESS TO THE COURTS:

75. Mailroom Supervisor Jeanne Watkins denied Plaintiff's access to the courts by deliberately refusing to mail Plaintiff's legal mail, delaying Plaintiff's legal mail, altering Plaintiff's transaction forms from certified mail to first class mail so Plaintiff could not show proof of service, illegally charging Plaintiff for first class indigent legal mail, and caused Plaintiff's inmate trust fund account to be frozen for months to pay for Plaintiff's indigent legal mail.

76. The Indiana Department of Corrections grievance officers refused to adequately investigate and grant relief to Plaintiff through the available administrative remedies, the grievance process, allowing mailroom supervisor Jeanne Watkins to illegally charge Plaintiff for indigent legal mail and deny Plaintiff access to the courts.

## VI. CAUSES OF ACTION

### A.

### DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION;

The First Amendment of the United States Constitution states:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

### DEFENDANTS VIOLATED PLAINTIFF'S RIGHTS UNDER 42 U.S.C.S. §2000cc, RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000

77. Prisoners have a right to observe and practice the religion of their choice. See *Cruz v. Beto*, 405 U.S. 319, 322 (1972)( Finding that prisoners retain 1st Amendment protections, including its directive that no law shall prohibit the free exercise of religion).

78. Plaintiff has not been able to attend religious Holy Days group worship for mandated by Rabbinic Law.

79. Plaintiff has not been permitted to participate in feast for Holy days.

80. CONFISCATED RELIGIOUS MATERIALS, GRIEVANCE #86006... Receive and Release Sergeant S. Robbins confiscated Plaintiff's essential religious materials that Plaintiff needed to lead Jewish services at the Wabash Valley Correctional Facility and lied about giving Plaintiff

the opportunity to pick which materials and publications would be confiscated. See grievance #86006.

81. Receive and Release Sergeant S. Robbins statement in grievance #86006 was false. At no time did Sergeant S. Robbins allow Plaintiff to pick out any publications or choose what publications would be confiscated or kept.

82. Chaplain D. Walker's statement in grievance #86006 was that he was shown pictures of Plaintiff's religious property when Plaintiff arrived at the Wabash Valley Correctional Facility and he informed Sergeant Robbins which items were not allowed, and that **NONE** of the publications confiscated seemed necessary to individual worship because Plaintiff only needed his **'TORAH'** to practice his religious faith of Orthodox Judaism.

83. David Liebel, Director of Religious and Volunteer Services for the Indiana Department of Corrections, in grievance response #86006 agreed with Sergeant S. Robbins and Chaplain D. Walker in denying Plaintiff's necessary religious Holy prayer books and items essential to the study, practice, and teaching of Plaintiff's faith, Orthodox Judaism.

84. L. A. Van Natta, Final Level Reviewing Officer for grievance response #86006, agreed with Sergeant S. Robbins, Chaplain D. Walker, and David Liebel in denying Plaintiff's essential Holy Days prayer books and items that Plaintiff explained to them in great detail violated promulgated rules and Policy 01-03-101.

85. All of the above Defendants ignored "Procedure For Jewish Religious Activities" policy in the "HANDBOOK OF RELIGIOUS BELIEFS AND PRACTICES", Policy 01-03-101, "The Development and Delivery of Religious Services"; the "INSTITUTIONAL HANDBOOK OF

18

JEWISH PRACTICE AND PROCEDURE"; Legal References in INDIANA CODE 1-1-2-3; 11-8-2-5; and 11-11-4-1 quoted in Policy 01-03-101, all of which describe in great detail what a Jewish Prisoner in the State of Indiana should have to practice his or her faith.

86. Grievance Officers, Patti Axe, T. Littlejohn, Assistant Superintendent F. Littlejohn, Director Of Religious And Volunteer Services , David Liebel, and Final Reviewing Authority L.A. Van Natta, all refused to allow Plaintiff to practice his sincerely held religious beliefs, to meet for group worship and observe Jewish Holy Days, and allow the necessary required items for those Holy Days to be properly observed, and refused Plaintiff a fit and proper "KOSHER DIET".

87. Plaintiff, and other Jewish prisoners, were transferred to the Wabash Valley Correctional Facility to receive a cost saving "KOSHER DIET".

88. Transferring Plaintiff, and other prisoners, to the Wabash Valley Correctional Facility to receive a cost saving Kosher Diet stripped those prisoners of their ability to practice and observe their constitutionally protected rights.

89. Wabash Valley Correctional Facility mailroom supervisor, Jeanne Watkins, hindered Plaintiff in his efforts to pursue a legal claim by delaying Plaintiff's legal mail, refusing to send out Plaintiff's legal mail because he was indigent, altering a financial transaction document to illegally charge Plaintiff for indigent legal mail. See, *Eichwedel V. Chandler,* 696 F3d 660 (7th CIR. 2012), An inmate may prevail on a right-of-access claim only if the official actions at issue hindered his efforts to pursue a legal claim. Jeanne Watkins official actions clearly hindered Plaintiff's efforts to pursue a legal claim.

19

## DEFENDANTS VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION;

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted".

## DEFENDANTS VIOLATED PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION;

"All persons born or naturalized in the United States, and Subject to the jurisdiction thereof, are citizens of the United States and or the State wherein they reside. No State shall make or enforce any law which shall abridge any privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

## DEFENDANTS VIOLATED ARTICLE 1., SECTION 15, AND SECTION 16, OF THE CONSTITUTION OF THE STATE OF INDIANA

### § 15 Persons arrested or confined; treatment

Section 15. No person arrested, or confined in jail, shall be treated with unnecessary rigor.

### § 16 Excessive bail or fines and cruel or unusual punishment

Section 16. Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense

90.  Plaintiff, Kenneth George Wolfe, a state prisoner, is alleging violation of his constitutional rights to receive adequate medical care and treatment, and seeking injunctive relief and money damages. Plaintiff also seeks an injunction and damages pursuant to the Americans with Disabilities Act and the Rehabilitation Act.

91 . The following Defendants acted in both their individual and professional capacities under color of state law to deprive Plaintiff of those rights protected by the United States Constitution, the Constitution of the State of Indiana, and promulgated rules.

**92.** Doctor Michal Mitcheff acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights. Dr. Mitcheff was the Regional Medical Director who denied mandated treatment and medical care for Plaintiff.

93. Doctor Mandip Kaur Bartels acted in both her individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights. Dr. Bartels was the Regional Medical Director that denied mandated medical care and treatment for Plaintiff.

94. Doctor Naveen Rajoli acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights. Dr. Rajoli falsified Plaintiff's medical records, denied treatment, refused to investigate serious injury, and caused Plaintiff the unnecessary and wanton infliction of pain and suffering.

95. Esther Hinton acted in both her individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights that knowingly caused Plaintiff the unnecessary and wanton infliction of pain and suffering.

96. Doctor Michael Person acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by not adequately investigating Plaintiff's serious medical needs. And treating those serious medical needs adequately.

97. Doctor Neil John Martin acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights. Dr. Martin committed fraud, falsified Plaintiff's medical records, denied Plaintiff needed medical care, and caused Plaintiff to suffer the unnecessary and wanton infliction of pain and injury.

98. Doctor Ronald Leroy Young acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights. Dr. Young committed fraud, falsified Plaintiff's medical records, and his actions caused Plaintiff years of unnecessary and wanton infliction of pain and injury.

99. Kim Hobson, RN, acted in both her individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by falsifying Plaintiff's medical records and assisting doctors in denying Plaintiff adequate medical care and treatment.

100. R. Robinson, RN, acted in both her individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights. Nurse Robinson refused Plaintiff needed medical care and treatment that caused Plaintiff to suffer needless pain and injury.

101. Bruce Lemmon is the Commissioner of the Indiana Department of Corrections and acted in both his individual and official capacity to deny Plaintiff of his constitutionally protected rights as the ruling authority of the Department who is aware of the abuses Corizon medical has done to Indiana prisoners.

102. Monica Gipson, RN, acted in both her individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by falsifying medical records to reflect less serious medical issues in Plaintiff's grievances that denied Plaintiff adequate medical care and treatment.

103. Tony Hobbs, acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by falsifying Plaintiff's medical records to

reflect less serious medical issues in Plaintiff's grievances that denied Plaintiff adequate medical care and treatment.

104. L. A. VanNatta acted in both her individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by falsifying Plaintiff's medical records to reflect less serious medical issues in Plaintiff's grievances that denied Plaintiff adequate medical care and treatment.

105. Mike Smith acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by falsifying Plaintiff's medical records to reflect less serious medical issues in Plaintiff's grievances that denied Plaintiff adequate medical care and treatment.

106. T. Littlejohn acted in both her individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by refusing to adequately investigate Plaintiff's serious medical needs and falsifying Plaintiff's grievance responses that denied Plaintiff adequate medical care and treatment.

107. F. Littlejohn acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by refusing to address Plaintiff's request concerning medical and religious issues Plaintiff made him aware of.

108. Chaplain D. Walker acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights. by denying Plaintiff his first amendment rights to practice his sincerely held religious beliefs and practices.

109. Sergeant S. Robbins acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by denying Plaintiff his first amendment rights to practice his sincerely held religious beliefs and practices.

110. David Liebel acted in both his individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by denying Plaintiff his first amendment rights to practice his sincerely held religious beliefs and practices.

111. Jeanne Watkins  acted  in both her  individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by denying Plaintiff access to the courts, illegally charging Plaintiff for indigent legal mail, refusing to mail Plaintiff's legal mail and provide service of summons, altering Plaintiff's financial documents, and committing fraud.

112. The Supreme Court has held that a doctor providing medical care and services under contract acted under color of state law, since the state had delegated its constitutional obligation to provide medical care to him. See West v. Atkins, 487 U.S. 42, 54-57, 108 S. Ct. 2250 (1988) "The Supreme Court has also stated generally that the state prisoners "enjoy a right of action against private correctional providers under 42 U.S.C. §1983".

113. The issues presented in this complaint should proceed past the screening stage. "A complaint should not be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement of relief." *Vickery v. Jones,* 100 F. 3d. 1334, 1341 (7th Cir. 1996).   Also, "When analyzing the dismissal of a complaint under Fed. R. Civ. P. 12(b) (6), I accept the factual allegations contained in the

complaint as true and constue them in the light most favorable to the Plaintiff." *Fries v. Helsper,* 146 F. 3d. 452, 457 (7th Cir. 1998).

114.   The Plaintiff has merit in this case. "To succeed in an Eighth Amendment cruel and unusual punishment claim, the prisoner must show that there were '"acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs,'" *Duane v. Lane,* 959 F. 2d 673, 677 (7th Cir. 1992)(Quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)).

115. The Defendants were, and continue to be, deliberately indifferent to Plaintiff's serious medical needs, causing the unnecessary and wanton infliction of pain and suffering. "A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and significantly affects the person's daily activities or features chronic and substantial pain." *Gutierrez v. Peters,* 111 F. 3d 1364, 1373 (7th Cir. 1997).   All of Plaintiff's claims in this complaint have been diagnosed by a physician mandating treatment, or they are so obvious a lay person would easily recognize the need for a doctors attention.

116. Corizon and the Indiana Department of Corrections officials were made aware of Plaintiff's serious medical needs through administrative remedies and request for care and chose to ignore those needs. The Defendants deliberate indifference amounts to criminal recklessness—They knew that the Plaintiff "was at serious risk of being harmed, and decided not to do anything to prevent that harm from occurring even though they could easily have done so." *Armstrong v.*

*Squadrito,* 152 F. 3d 564, 577 (7th Cir. 1998)(citing *Farmer v. Brennan,* 511 U.S. 825, 836-837, 128 L. Ed. 811, 114 S. Ct. 1970 (1994)).

117.  Doctor Neil J. Martin discontinued Plaintiff's methadone that cost about, $0.17, seventeen cents a pill that Doctor Michael Person ordered, and Regional Medical Director Mandip Bartels approved. After Plaintiff requested surgery and submitted his Notice Of Tort Claim Doctor Martin discontinued Plaintiff's methadone in retaliation for seeking treatment for serious medical needs.

118. See *Johnson v. Doughty,*433 F. 3d 1001, 1013 (7th. Cir. 2006)(Finding that medical staff's "obdurate refusal" to change prisoner's treatment, despite his reports that his medication was not working and his condition was worsening, could constitute deliberate indifference.) Defendants were notified that Plaintiff's condition was, and is, worsening and discontinued his pain medication in retaliation for seeking surgery that would cost them money.

119.  Pain management for chronic long term pain relief in the Department of Corrections borders on barbarous behavior by Defendants. Plaintiff submitted numerous grievances, request, and letters, requesting assistance concerning his pleas for assistance with pain management for his numerous underlined medical issues that have caused Plaintiff years of chronic pain and loss of mobility. See *Dixon v. Godinez,* 114 F. 3d 640 (7th. Cir. 1997)(Prison condition which might not ordinarily violate Eighth Amendment may nonetheless do so if it persist over extended period of time.) Also, *Williams v. Ramos,* 71 F. 3d. 1246 (7th. Cir. 1995)(Eighth Amendment imposes upon prison officials duty to maintain humane conditions of confinement, including adequate food, clothing, shelter, and medical care.) Also, *Rhodes v. Chapman,* 452 U.S. 337, 69

26

L. Ed. 2d 59, 101 S. Ct. 2392 (1981)(Practices that involves unnecessary and unrestricted infliction of pain are prohibited.)

120.  Plaintiff's psychological pain provides a separate basis for recovery. Pain is cognizable for constitutional purpose, and the Court can take into account psychological pain when considering a case alleging that a constitutional violation has taken place. The Supreme Court has stated: The Defendants wanton infliction of pain meets the "objective" and "subjective" components of this complaint. [t]he Eighth Amendment prohibits the unnecessary and wanton infliction of "pain", rather than "injury". "Pain" in its ordinary meaning surely includes a notion of psychological harm. I am unaware of any precedent of this Court to the effect that psychological pain is not cognizable for constitutional purposes. See *Hudson v. McMillian,* 503 U.S. 1, 16 (1992)( Blackmun, J., concurring)(internal citation omitted); see also, *St. Germain v. Goord,* No. 96-cv-1560 (asp/drh), 1997 wl 627552, at*3-4 (N.D.N.Y. Oct. 8, 1997)(Inmate's misery, anguish, psychological pain, and fear found actionable).   Doctor Ronald Leroy Young, II, made a fraudulent statement claiming that Plaintiff **ONLY HAD MILD ARTHRITIS** in his neck when Plaintiff has submitted medical documents and professional statements to the contrary in his exhibits to this complaint, and in his medical records. By committing said fraud Doctor Young caused Plaintiff years of unnecessary and wanton infliction of pain and suffering, condoned by Indiana Department of Corrections officials and other Corizon medical staff. Doctor Young's fraudulent medical statement was used to deny Plaintiff needed medical care and to save money by both the Indiana Department of Corrections and Corizon.

121.  On February 10, 2016, Plaintiff was assaulted and received a serious head injury that left him unable to eat solid food for months, caused eye problems that persist to date, head and neck

pain that is constant and very intense. Defendants Doctor Rajoli, and Nurses Hobson and Robinson, along with grievance officers Littlejohn and Axe, and other D.O.C. staff, all refused to investigate and treat Plaintiff's serious injuries for months. See *Murphy v. Walker,* 51 F. 3d 714, 719 (7th. Cir. 1995)(Holding that a two month failure to get prisoner with head injury to a doctor stated a claim).

122. The Wabash Valley Correctional Facility mail room supervisor Jeanne Watkins has refused to allow Plaintiff to serve Summons for this complaint so Plaintiff has served the Counsel of Record and hereby notifies all parties in this complaint.

123. Plaintiff attempted to remove this complaint from state court but that complaint was denied.

124. Plaintiff then paid a filing fee of $400.00 in an attempt to file this complaint in District Court but was told by the Court to submit this complaint anew, which is what Plaintiff is now doing.

125. See attached exhibits; grievances; exhaustion of administrative remedies.

Kenneth George Wolfe, Plaintiff

## VII. RELIEF

**WHEREFORE**, the Plaintiff request that this Court grant the following relief:

A.  Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States and the State of Indiana;

B.  Order the Defendants to pay compensatory and punitive and nominal damages;

C.  Order the Defendants to pay all cost incurred relating to this complaint;

D.  Order the Defendants to pay reasonable attorney fees and cost associated with this complaint;

E.  Issue a PROTECTIVE ORDER that Plaintiff will not be retaliated further for this action;

F .  Grant all other equitable relief that this Honorable Court deems just and proper.


Kenneth George Wolfe, Plaintiff
#863575
Wabash Valley Corr. Facility, D-322
P.O. Box 1111
Carlisle, IN. 47838

## VERIFICATION

I, Kenneth George Wolfe, hereby verify and affirm under the penalties for perjury that the above and foregoing representations are true and correct to the best of my knowledge and belief.

Kenneth George Wolfe, Plaintiff

## CERTIFICATE OF SERVICE

A copy of the foregoing has been served on adverse parties pursuant to the Court's prisoner e-filing program.

Kenneth George Wolfe #863875
Wabash Valley Correctional Facility
6908 Old U.S. Hwy. 41
P.O. Box 1111, D-322
Carlisle, Indiana 47838